UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED OF OMAHA LIFE
INSURANCE COMPANY,

        Plaintiff,

v.                                                                Case No. SA-19-CV-0814-JKP

SARA JO WOMACK-RODRIGUEZ, et al.,

        Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

        Plaintiff, United of Omaha Life Insurance Company ("United") commenced this inter-pleader action alleging that, following the death of its insured, Michael Kelly Womack, on May 13, 2019, it held death benefits based upon two life insurance policies (Policy UA9443754 ($1,600,000) and Policy UA9451672 ($400,000)). It identified four potential claimants for the single death benefit fund: (1) the decedent's daughter, Sara Jo Womack-Rodriguez; (2) his son, Trenton Seth Womack; (3) his business associate, James G. Murry, Jr.;[1] and (4) American Funeral Financial, LLC, which had provided funeral services. Murry has countersued United and its insur-ance agent, Saul Trevino for acts and omissions related to attempts to change the beneficiary on both policies.

        Before the Court are the following four motions: (1) *Opposed Motion for Discharge and Other Interpleader Relief* (ECF No. 20); (2) *United of Omaha Life Insurance Company's Motion to Dismiss James G. Murry's Second Amended Counterclaims* (ECF No. 58); (3) *Counter-Defend-ant Saul Trevino's Motion to Dismiss* (ECF No. 65); and (4) *First Amended Joint Motion to Order Deposit and Disburse Interpled Funds* (ECF No. 68). The motions are ripe for ruling.

---

[1] Murry corrected the spelling of his name in an advisory to the Court. *See* ECF No. 24.

# I. BACKGROUND[2]

The two relevant life insurance policies initially named the policyholder's daughter as the sole beneficiary. *See* Ex. A-1 (application); Ex. A-7 (application). Trevino as agent for United solicited both policies and was the agent of record. Each policy states:

> You may change the beneficiary by written request during the insured's lifetime. Unless you specify otherwise in the written request, the change will be effective on the date you sign the written request. However, it will not be binding on us until we record it at our home office. Any rights created by a change of beneficiary will be subject to any payments we make or actions we take between the date you sign the written request and the date we record it at our home office. If the beneficiary designation in effect is irrevocable, the beneficiary must also sign the written request.

Ex. A-1 at 10; Ex. A-7 at 10.

In October 2017, the policyholder through Trevino attempted to change the beneficiary for both policies to the policyholder's son. United processed, recorded, and accepted the changed beneficiary for the lesser policy, i.e., Policy UA9451672, but rejected the designation for the major policy, i.e., Policy UA9443754, because the form was not notarized.

Later that month, the policyholder signed and notarized a change of beneficiary to Murry for the major policy. This change of beneficiary was provided to Trevino who maintained it in his records. In October 2018, the policyholder signed a change of beneficiary to Murry for the lesser policy. The policyholder had this change notarized on November 1, 2018. The signed and notarized change was provided to Trevino who maintained it in his records. On or about November 6, 2018, Trevino sent this change to Murry for his signature so as to make the change irrevocable. Two weeks later, Murry executed and returned the change to Trevino. As shown by Changes of Beneficiary ("COB") attached to the interpleader complaint, such COBs state: "No changes are binding until received and recorded by the company at the home office. We will record the change(s) and

---

[2] The facts are either uncontested or viewed in a light most favorable to Murry as required for motions to dismiss under Fed. R. Civ. P. 12(b)(6). The referenced exhibits are attached to the interpleader complaint and are properly considered by the Court.

send a confirmation." Ex. A-3; Ex. A-9.

Both policies remained in effect through the policyholder's death on May 13, 2019. After the policyholder's death, his daughter assigned $8,489.45 of the insurance proceeds to American Funeral Financial, LLC. *See* Ex. A-6.

Murry called Trevino the day after the death. Trevino informed him that both changes to Murry were ineffective because they had not been notarized. To Murray's knowledge it is unclear whether, during the policyholder's lifetime, (1) Trevino submitted the two changes naming Murry beneficiary of both policies to United or (2) United received and failed to process, record, and accept the changes.

On or about May 29, 2019, Murry requested a determination as to his claims to the proceeds of both policies. Ex. A-5. On June 13, 2019, counsel for Murry contacted United through email stating a "hearty and vigorous disagreement" with any failure to recognize the change of beneficiaries to Murry. *See* Ex. A-4. The next day, United responded that its review of the file showed no attempt to change the beneficiary to Murry. *See id.* The day after that, counsel expressed surprise regarding the lack of documentation and stated that it would be remedied immediately. *See id.* That same day, United contacted Trevino about the COBs. *See id.* Trevino responded that there had been an exchange of documents, but the COBs had not been notarized. *See id.* At United's request, Trevino, on June 17, 2019, provided COBs naming Murry as beneficiary for both policies. *See id.* Despite receiving those forms, United has not processed, recorded, or accepted the forms.

United brought this interpleader action under Fed. R. Civ. P. 22 as a bearer of life insurance benefits sought by four rival claimants: (1) daughter, (2) son, (3) business associate, and (4) funeral parlor. After each claimant filed an answer to the interpleader complaint, United filed an opposed motion for discharge and other interpleader relief. Though that motion, United seeks (a) a declaration that it has satisfied its duties and obligations with respect to policies and owes no other

duties or obligations; (b) to deposit death benefits plus accrued interest into the registry of the Court less attorney fees in the amount of $10,000; (c) to be discharged from this action with prejudice; (d) to enjoin parties from further litigation except an action by Murry pending in state court, *Murry v. United of Omaha Life Insurance Company and Saul Trevino*, No. 2019CI14979; (e) to dismiss all claims asserted against it in this action with prejudice; (f) to realign remaining parties to reflect the true nature of the dispute. *See* ECF No. 20. Only Murry opposes this motion, but he expressly does not oppose the deposit of death benefits, except to the extent United seeks to withhold fees. He opposes discharging the insurance company or enjoining any other litigation against it because of his asserted counterclaims and because the insurance company is not free from blame for the controversy.

In his most recent operative pleading, Murry asserts three counterclaims against United: (1) breach of contract and duties of good faith and fair dealing; (2) violation of the Prompt Payment of Claims provisions of Subchapter B of Chapter 542 of the Texas Insurance Code, Tex. Ins. Code Ann. §§ 542.051–542.061, in two distinct respects (a) by not notifying him in writing whether it accepted or rejected his claim, required additional documents or forms for the claims, or needed additional time to make a determination in violation of § 542.055 and (b) violating Tex. Ins. Code § 542.058(c) by failing to deposit proceeds of the insurance policies into the Court registry within ninety days of receiving documents from the claimants in this interpleader action; and (3) negligence. *See* ECF No. 57 ¶¶ 21-44. Murry asserts only the negligence claim against Trevino. *Id*. ¶¶ 38-44; ECF No. 70 (response to Trevino's motion to dismiss).

Murry claims that a valid contract was formed between he and United, upon Trevino's receipt of the change of beneficiary to Murry on the major policy. He further claims that United breached that contract when it failed to process, record, or accept the form. In addition, he claims that United breached its duties of good faith and fair dealing by not evaluating, processing, or

providing a denial of his claims. He also claims that, as a result of United's breaches, he has sustained damages and incurred attorneys' fees and expenses.

Murry premises his negligence claims against both United and Trevino on the failure of Trevino to submit the changed beneficiary forms within the policyholder's lifetime. Alternatively, he alleges that Trevino owed a duty to ensure that both beneficiary changes were submitted, accepted, recorded, and processed by United and that his conduct fell below the applicable standard of care owed.

United has moved to dismiss Murry's counterclaims under Fed. R. Civ. P. 12(b)(1) on grounds of standing or ripeness and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Trevino has also moved to dismiss the counterclaims under Rules 12(b)(1) and (6). He argues that the Court lacks subject matter jurisdiction because Murry only asserts state claims and there is an absence of diversity jurisdiction. Murry opposes both motions.[3]

The rival claimants recently filed a joint motion to order deposit and disbursement of the interpleaded funds. *See* ECF No. 68. The claimants therein state that they "have agreed to resolve the disputes between them and have entered a settlement agreement." *Id*. ¶ 5. They further state that United "refused to participate in the settlement discussions with the claimants" and thus, Murry's counterclaims against United and Trevino "are unresolved and remain pending." *Id*. Claimants ask the Court to order United to deposit the death benefits, including accrued interest, "in the registry of the Court to be disbursed according to the terms of the settlement agreement between the claimants." *Id*. ¶ 6.

---

[3] In his response to United's motion to dismiss, Murry often invokes Fed. R. Civ. P. 10(c) to adopt by reference various paragraphs contained in his response to a prior motion to dismiss. This practice is simply not permitted. Although movants may, within their filed motions, adopt by reference any "statement in a pleading," as permitted by Rule 10(c), a response to a prior motion is not a pleading. Rule 7(a) defines pleadings allowed in federal court and it does not list motions or any related response. While the Court may exercise its discretion to review matters improperly adopted under Rule 10(c), movants and parties who misapply or abuse the rule do so at their own risk. They have no basis to object if the Court declines to review an improper adoption by reference under Rule 10(c).

In response to the claimants' motion, United does not oppose depositing the life insurance proceeds into the Registry of the Court, but does oppose disbursing the funds per the claimants' settlement agreement without an opportunity to obtain its attorney's fees, discharge, and enjoinment of claims against it. *See* ECF No. 69 at 1. United also contends that claimants did not invite it to participate in the settlement discussions rather than it refused to participate. *Id*. at 2. It submits that settlement discussions could have addressed its attorney's fees, might have resolved the counterclaims asserted against it, and could have rendered the joint motion unnecessary. *Id*. As the case currently stands, United continues to seek its attorney's fees and its discharge from this action, as well as dismissal of the counterclaims asserted against it. *Id*. at 3.

With these background facts in mind, the Court proceeds to the various motions starting with the challenges to jurisdiction asserted under Fed. R. Civ. P. 12(b)(1).

## II. MOTIONS TO DISMISS UNDER FED. CIV. P. 12(b)(1)

Murry has asserted a negligence counterclaim against United and Trevino. Against United alone, he has also asserted counterclaims for breach of contract and duties of good faith and fair dealing in addition to violations of Texas Insurance Code. United and Trevino seek dismissal of these counterclaims for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). United invokes standing and ripeness as jurisdictional bars. Trevino argues a lack of subject matter jurisdiction because Murry only asserts state claims and there is an absence of diversity jurisdiction.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should

consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). By first considering a Rule 12(b)(1) motion, courts avoid "prematurely dismissing a case with prejudice" when it lacks jurisdiction. *Ramming*, 281 F.3d at 161. A "court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

Courts have "the power to dismiss for lack of subject matter jurisdiction based on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *accord Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

The Fifth Circuit has long distinguished between "facial" and "factual" jurisdictional attacks. *See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Id.* United specifically recognizes that it is making a facial jurisdictional attack. *See* ECF No. 58 at 3. Because Trevino does not submit evidentiary matters with his motion to dismiss, his attack is also merely facial. Such an attack requires the courts to "consider the allegations of the complaint as true." *Williamson*, 645 F.2d at 413.

## A. <u>Diversity Jurisdiction</u>

For an interpleader action filed pursuant to Fed. R. Civ. P. 22, jurisdiction rests upon

diversity of citizenship. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 994-95 (5th Cir. 1985) (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 528, n.3 (1967)). More specifically, "[f]or Rule 22 interpleader, diversity requires the stakeholder—the party seeking adjudication of multiple claims against it—to be diverse from the claimants." *Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 623 (5th Cir. 2019). Furthermore, "interpleader jurisdiction is determined at the time the interpleader complaint is filed." *Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, LLC*, 782 F.3d 186, 193-94 (5th Cir. 2015).

Here, there is no dispute that this interpleader action satisfied the requirements for diversity jurisdiction under 28 U.S.C. § 1332 when initially filed. However, Trevino essentially argues that his addition to this litigation through Murry's counterclaim defeats diversity jurisdiction because he is not diverse from claimants and because Murry only asserts state law claims without an independent federal jurisdictional basis for his counterclaims.

Trevino's argument is misplaced. Not only is it in conflict with determining interpleader jurisdiction at the time of filing, but it fails to recognize the complexities of various types of claims. "In complex litigation like this case, with its various claims flying back and forth, there are two distinct steps in the jurisdiction determination." *Zurn Indus., Inc. v. Acton Const. Co.*, 847 F.2d 234, 237 (5th Cir. 1988). The courts first examine "the primary or original purpose for filing suit." *Id*. The primary purpose is clear in this case – United filed this interpleader action through diversity of citizenship, 28 U.S.C. § 1332, because it possessed insurance benefits that could garner contested claims from identified claimants. The claimants are completely diverse from the stakeholder and there is no question that the jurisdictional amount is satisfied in this case. Based on that primary, original purpose there is no basis to realign the original parties on claims asserted by United. Nor is there any showing that United's claims are merely a sham to obtain federal jurisdiction. Consequently, subject matter jurisdiction exists. *See id.*

Once courts determine that subject matter jurisdiction exists on the original, primary purpose of the federal case, they examine "the various other claims . . . to determine if they are properly in the court's ancillary jurisdiction or have an independent basis for federal jurisdiction." *Id*. With respect to jurisdiction, the "terms 'ancillary,' 'pendent,' and 'supplemental' are all used, essentially interchangeably." 13 Charles Alan Wright et al., Federal Practice and Procedure § 3523 (3d ed. 2010). And, of course, 28 U.S.C. § 1367, has governed supplemental jurisdiction since its enactment in 1990. Although, prior to the passing of § 1367, courts distinguished between types of counterclaims when determining whether to exercise ancillary jurisdiction, § 1367 "does not draw a distinction between compulsory and permissive counterclaims." *Cordero v. Voltaire*, LLC, No. A-13-CA-253-LY, 2013 WL 6415667, at \*3 (W.D. Tex. Dec. 6, 2013). Accordingly,

> the appropriate focus should be whether the counterclaims satisfy the requirements of § 1367—that is, whether the state law claims are so related to a federal claim as to form part of the same case or controversy under Article III of the Constitution— rather than on whether the counterclaim is compulsory or permissive.

*Id*. (citation omitted). Nevertheless, whether a counterclaim is compulsory within meaning of Rule 13(a) remains relevant. *Id*.

First, "a failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim." *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998) (citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 (1974); *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1080 (5th Cir. 1984)). Furthermore, under Fed. R. Civ. P. 13(a), a "claim is not compulsory if it was the subject of another pending action at the time the action was commenced." *Baker*, 417 U.S. at 469 n.1; *but see*, *H.L. Peterson Co. v. Applewhite*, 383 F.2d 430, 433, n.3 (5th Cir. 1963) (stating that "[j]urisdiction was not precluded because the counterclaim was the subject of a pending suit in the state court" and "Rule 13(a) merely provides an option for the counter-claimant" which does not make the counterclaim non-compulsory).

Here, another action was pending in state court when United filed its motion for discharge

9

and other interpleader relief. *See* ECF No. 20 at 5. While it is not clear whether that action preceded this federal action or simply preceded the filing of the motion for discharge, that distinction does not appear particularly relevant to whether the requirements of § 1367(a) have been met. Although the exception for prior pending actions may not take the counterclaim outside the parameters of § 1367(a) over which the federal district courts have supplemental jurisdiction, a pending state action involving all three counterclaimants may constitute a compelling reason to decline supplemental jurisdiction under § 1367(c)(4).

At some point during this case, Murry "nonsuited the claims filed against United of Omaha in Cause No. 2019CI1479 in the 131st Judicial District Court of Bexar County, Texas." *See* ECF 29-1 ¶ 5. It is unclear when that occurred or whether Murry also nonsuited the case against Trevino. While these are matters that may impact whether the Court should decline supplemental jurisdiction, they do not impact the subject matter jurisdiction over this federal interpleader action as filed by United.

**B. <u>Standing and Ripeness</u>**

United asserts that Murry lacks standing to pursue his counterclaims and it mentions ripeness as an alternative jurisdictional basis in an appended footnote. With respect to standing, it states: "Unless and until this Court determines that Murry is in fact the rightful beneficiary of all or part of [the held life insurance] proceeds, he lacks standing to bring his counterclaims against United of Omaha."

To overcome a facial attack under Fed. R. Civ. P. 12(b)(1) based upon constitutional standing, Murry must allege that he suffered (1) injury in fact (2) fairly traceable to United's actions and (3) likely to be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). United contends that any injury to Murry is contingent on whether he is deemed a proper beneficiary of the

insurance proceeds and it argues that the possibility of a future injury does not satisfy the constitutional requirements for standing.

United devotes little time to its standing argument and only invites the Court to consider ripeness if the Court views the counterclaims as unripe. *See* ECF No. 58 at 5-6 & n.6. It provides no case law directly supporting a lack of jurisdiction over the counterclaims. It instead provides caselaw regarding general principles of standing. But when it addresses matters at issue in this case, it merely relies on argument and conclusions without citation to any guiding caselaw. It concludes its brief arguments by stating that Murry's "lack of standing is further illustrated by examining the elements of his counterclaims." *See id.* at 6. In the paragraphs that follow, it proceeds to explain why the counterclaims fail including some arguments that touch upon standing. But in cases involving similar claims, the courts did not dismiss for lack of standing or any other jurisdictional basis.

A potential beneficiary, such as Murry, has standing to pursue a breach of contract under Texas law upon the policyholder's death. *Prudential Ins. Co. v. Durante*, 443 S.W.3d 499, 509 (Tex. App. – El Paso 2014, pet. denied). Similarly, *Durante* also addressed the Texas Prompt Pay Statute and particularly, Tex. Ins. Code Ann. § 542.058(c), but expressed no concern about standing to pursue claims under that statute. *See id.* at 510-12.

With respect to the asserted negligence claims, the Court finds *Deshotel* instructive although it addressed ripeness of a Louisiana delictual claim rather than standing to assert the Texas negligence claims asserted by Murry. First, although *Deshotel* identified the claim as delictual in nature, its discussion shows that the claim appeared to be premised on negligence of the insurer:

> In the present case, it is readily apparent that New York Life's interpleader claim and Smith's delictual counterclaim share an aggregate of operative facts and have a logical relationship. Both logically relate to and arise from the same facts: Rodney Smith purchased life insurance policies from New York Life; he designated his wife, June Smith, and his friend, Jane Deshotel, his sole beneficiary on several different occasions; on his final attempt to change beneficiaries to name June Smith,

> his signed form was sent to New York Life, but for some yet undetermined reason, perhaps the company's negligence, it was not processed and recorded, so that Jane Deshotel was the last duly recorded beneficiary upon Rodney Smith's death.

142 F.3d at 882. Under Louisiana law, delictual actions include "fraud, conversion, and negligence." *Patin v. Aegis Capital Corp.*, No. CV 18-5952, 2018 WL 4052198, at *3 (E.D. La. Aug. 24, 2018). Notably, under facts similar to those alleged here, the Fifth Circuit held that the delictual claim under Louisiana law "had ripened into a mature claim at the time [the claimant] filed her answer to the interpleader complaint," that such "claim was a compulsory counterclaim," and the "failure to plead it bar[red] her from bringing it as a later independent action in federal court." *Deshotel*, 142 F.3d at 879. Clearly, if the claimant had lacked standing to assert the delictual negligence claim, the Fifth Circuit would not have ruled the way it did.

Regardless of verbiage, i.e., standing or ripeness, the Court finds United's jurisdictional arguments unpersuasive. Murry has alleged a sufficient injury to have standing to pursue his claims. And the Court finds no basis to question the ripeness of the claims. Accordingly, the Court denies the motions to dismiss to the extent they seek dismissal on jurisdictional grounds.

Rather than turn immediately to the bases for dismissal asserted under Fed. R. Civ. P. 12(b)(6), the Court next considers the motions regarding interpleader relief. Consideration of the interpleader issues put the Rule 12(b)(6) motions in better context.

### III. MOTIONS REGARDING INTERPLEADER RELIEF

Early in this case, United moved for discharge and other interpleader relief. Murry opposed this motion in some respects. More recently, the rival claimants moved for an order to deposit and disburse the interpleaded fund because they have resolved the disputes between them and have agreed to a settlement.

Pursuant to Fed. R. Civ. P. 22, United filed this interpleader action naming four rival claimants. The rule permits a plaintiff that may be "expose[d] to double or multiple liability" to join the

multiple parties with competing claims and require them to interplead. *See* Fed. R. Civ. P. 22(a)(1). Rule 22 interpleader does not require deposit of funds into the court's registry. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976). "This rule supplements – and does not limit – the joinder of parties allowed by Rule 20." Fed. R. Civ. P. 22(b). "The purpose of the interpleader device is to allow a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (citation and internal quotation marks omitted); *accord Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 631 (5th Cir. 2002) (explaining that "[a] traditional interpleader suit is an equitable action available to a plaintiff-stakeholder who is, or may be, exposed to multiple liability or multiple litigation, usually when two or more claims are brought that are mutually inconsistent").

"A district court has broad powers in an interpleader action." *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999). In general, courts resolve an interpleader action through a two-step process. *Id.*; *Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, LLC*, 782 F.3d 186, 193 (5th Cir. 2015). "In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Auto Parts Mfg. Miss., Inc.*, 782 F.3d at 193 (quoting *Rhoades*, 196 F.3d at 600). Upon finding that the action satisfies those requirements and "that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants." *Id.* (same).

Generally, a party is not entitled to interpleader relief when that party "stands as a wrongdoer with respect to the subject matter of the suit," rather than being "free from blame in causing the controversy." *Hovis*, 553 F.3d at 263. While blame and cause are relevant to this inquiry, the

best descriptor to avoid confusion is "innocent stakeholder" because blame and cause are also relevant to a separate issue later in the analysis. *Id*. at 263-64.

Merely asserting "counterclaims against [the insurer] for breach of contract, negligence, breach of fiduciary duty, bad faith and unfair trade practices, all relating to [the insurer's] alleged failure to process [a claimant's] request to change the ownership and beneficiary of [the] policy in a timely manner," is insufficient to place the blame for the interpleaded controversy on the insurer. *Id*. at 261, 263. Even with the alleged conduct, the insurer is considered a blameless or innocent stakeholder for purposes of having the interpleader device available to it. *See id.* To withdraw the availability of interpleader requires more than a finding that the insurer "can plausibly be blamed for the existence of the underlying ownership controversy." *Id*. at 265-66. On the facts at issue in *Hovis*, the court could not say that the insurer's alleged negligence was to blame for the dispute and no other claim was even as close as that one. *Id*. at 266.

In this case, upon the policyholder's death, multiple adverse claimants had a claim to all or part of the proceeds of the single fund held by United. The acts or omissions of United as alleged in Murry's counterclaims did not create the multiple claimants or the single fund. United did not cause the controversy leading to the interpleader action. The circumstances permitting the proper filing of such action existed regardless of the events concerning Murry. Under these facts, United qualifies as an innocent stakeholder.

When there is "a genuine dispute over entitlement to the insurance proceeds, and [the insurer is] not to blame for its existence, the insurer properly brings an interpleader action; thus, satisfying the first step of the interpleader process. *Id*. at 263. Whether bringing such action "immunized" the insurer against a claimant's "counterclaims is a separate issue" that may depend on whether the insurer can be found to have plausibly caused the dispute or be blamed for it. *Id*. at 263-66. Regardless of that potential, the insurer is "certainly entitled to *some* measure of

14

interpleader protection." *Id*. at 264.

As already mentioned, a "typical interpleader action proceeds in two distinct stages." *Id*. at 262. But when the adverse claimants reach "a private settlement . . . about how to distribute the life insurance proceeds," the case is atypical, and the court might never reach the second step. *See id.* In this case, there is no real dispute that United brought a proper interpleader action – there is a single fund with multiple adverse claimants. Thus, "the first stage of the analysis is quite simple," United "has satisfied the requirements for filing an interpleader action, and it will be permitted to pay the Fund into the registry of the court." *Westlake Styrene, LLC v. United States*, No. CIV.A. H-10-2631, 2011 WL 643265, at *2 (S.D. Tex. Feb. 16, 2011).

Although all parties agree to permitting United to deposit the insurance proceeds into the Court's registry, Murry opposes United's request to withhold attorney fees from such deposit. It also appears that the settlement between the claimants does not account for disbursing any part of the fund for United's attorney fees. Murry also opposes discharging the insurance company or enjoining any other litigation against it because of his asserted counterclaims. United opposes disbursement of the funds as requested by the settling claimants because the settlement does not consider the issue of attorney fees.

As a general matter, a "stakeholder lacking an interest in the fund should be discharged from the action upon payment of the fund into the court registry." *Id.* However, because Murray contends that United is not a disinterested stakeholder, which is a different concept than the innocent stakeholder previously addressed, there is a dispute as to whether the Court should discharge United.

The Southern District of Texas has equated an interested stakeholder with one that is "in substantial controversy with one of the claimants." *Id*. (quoting *Rhoades*, 196 F.3d at 603). This Court certainly agrees that all stakeholders that have a substantial controversy with any claimant

are by definition not disinterested. But the Court is not certain that stakeholder interest is only tied to a substantial controversy with a claimant. *Rhoades* seems to make a distinction between the two concepts by using the conjunction "and." *See* 196 F.3d at 603 ("The award of attorney's fees is in the discretion of the district court, and fees are available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants."). A more recent Fifth Circuit opinion also treats the two concepts as separate. *See N.Y. Life Ins. & Annuity Corp. v. Cannatella*, 550 F. App'x 211, 217 (5th Cir. 2013) (per curiam) (quoting relevant language from *Rhoades* and then stating: "New York Life was a disinterested stakeholder and was not in substantial controversy with either defendant").

At this point, the Court need not give any specific meaning to the term, "disinterested," as used to describe a stakeholder. For now, it is enough to recognize that any stakeholder that is in substantial controversy with one of the claimants does not qualify as a disinterested stakeholder. The Court may appropriately deny discharge of the stakeholder when a counterclaim is pending against the stakeholder. *See Westlake Styrene, LLC*, 2011 WL 643265, at *2-3. Under the "modern approach" regarding interpleader practice, when "a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court." *Hovis*, 553 F.3d at 264. Given the counterclaims asserted against United by Murry, there is a definite controversy directly between United and a claimant in this case. And, as discussed when addressing the Rule 12(b)(6) portion of the motions to dismiss, the viability of certain claims makes the controversy substantial within the meaning of *Rhoades*. Based on the viable counterclaims, United is not entitled to discharge at this time.

The issue of attorney fees also implicates whether United is a disinterested stakeholder. District courts have "the authority to award reasonable attorneys' fees in interpleader actions."

*Rhoades*, 196 F.3d at 603. They may award at their discretion and, as stated previously, such "fees are available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants." *Id.*; *accord Cannatella*, 550 F. App'x at 217 (quoting *Rhoades*). The courts may consider "a number of factors when assessing whether attorneys' fees are appropriate." *Cannatella*, 550 F. App'x at 217. And although Courts generally award attorneys' fees and costs "against the interpleader fund," they "may, in the discretion of the court, be taxed against one of the parties when their conduct justifies it." *Westlake Styrene, LLC*, 2011 WL 643265, at *3 (quoting *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989) (taxing part of the fees and costs against a claimant that had "engaged the parties and the court in unnecessary motions practice"). At this stage of the litigation, United is not a disinterested stakeholder and is in substantial controversy with Murry. An award of attorney fees is not warranted at this time. Notably, the issues in *Rhoades* were decided at summary judgment, *see* 196 F.3d at 595-96, whereas this case has not yet gotten to that stage.

Under the circumstances here, the Court grants both motions regarding interpleader relief to the extent they seek an order directing United to deposit the insurance benefits and accrued interest into the registry of the Court. The Court otherwise denies the motions. Because United is not a disinterested stakeholder at this time, its other relief is unwarranted. And because the settlement between the claimants, without participation by United, did not address potential attorney fees for United, disbursement of the fund appears premature. Accordingly, the Court denies the claimant's motion for disbursement in accordance with their settlement.

## IV. MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

If Murry's counterclaims survive dismissal under Fed. R. Civ. P. 12(b)(1), United argues that they fail under Rule 12(b)(6) because they are not independent from his claim to proceeds. Pursuant to Rule 12(b)(6), Trevino also moves to dismiss any counterclaim asserted against him.

Litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Like all claims for relief, counterclaims must satisfy Fed. R. Civ. P. 8(a)(2) to survive a Rule 12(b)(6) motion to dismiss." *Pylant v. Cuba*, No. 3:14-CV-0745-P, 2015 WL 12753669, at *2 (N.D. Tex. Mar. 6, 2015) (quoting *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *5 (D. Kan. Aug. 29, 2011)); *accord Solutions Shared Servs. v. Jimenez*, No. 5:19-CV-01054-OLG, 2020 WL 1698714, at *3 (W.D. Tex. Apr. 6, 2020) (addressing counterclaim under Rule 12(b)(6)). As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). For this limitation, pleadings include counterclaims. *See Pylant*, 2015 WL 12753669, at *2. Furthermore, whether the pleading is a complaint or a counterclaim, "courts accept all well-pleaded facts as true and view them in the light most favorable to the party asserting the claim." *Id*. at *3 (citing cases).

A well-pleaded claim, whether asserted in a complaint or a counterclaim, "may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, the party asserting the claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions"). Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "In short, any claim – whether stated originally in the complaint or subsequently as a counterclaim – fails to state a claim upon which relief may be granted when it fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Pylant*, 2015 WL 12753669, at *3 (quoting *Twombly*, 550 U.S. at 570).

> A claim has facial plausibility when the [party asserting the claim] pleads factual content that allows the court to draw the reasonable inference that the [party moving for dismissal] is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a [the movant] has acted unlawfully. Where a complaint [or counterclaim] pleads facts that are "merely consistent with" [an opposing party's] liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), the party asserting the claim must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the asserting party will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

Murry asserts three counterclaims against United: (1) breach of contract and duties of good faith and fair dealing, (2) prompt payment violations, and (3) negligence. As to Trevino, he only asserts a negligence claim. He premises these claims on conduct occurring before and after the insured's death in May 2019. He alleges negligence based on acts and omissions related to written requests to change of the beneficiary of the insurance policies that have not been recorded by United. One aspect of his claims is that United never responded to his insurance claim submitted in May 2019 based on the earlier completed changes of beneficiaries. He further alleges that, after Trevino submitted completed, signed, and notarized forms on June 17, 2019, United still failed to respond or provide any determination as to their validity until it filed its interpleader action. He

bases his prompt payment claims on alleged failures of United to acknowledge receipt, commence

investigation or request any information from Murry in response to his May 19, 2019 claim within

the applicable timelines set forth under Tex. Ins. Code § 542.055 and alleged violations of §

542.058(c).

Trevino argues that the negligence claim fails to state a claim upon which relief can be

granted. United presents several arguments for why Murry's counterclaims fail, including that this

interpleader action protects United against claims that are not independent of the interpleader

funds. The Court will address that alleged protection before addressing the particular claims as-

serted.

## A. <u>Interpleader Protection</u>

United argues that Murry's counterclaims fail because they are not independent of his claim

for proceeds and thus interpleader shields it from liability. The Fifth Circuit has held that "[o]nce

the stakeholder joins the claimants, a claimant may file a counterclaim against the stakeholder as

an opposing party." *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 881 (5th Cir. 1998). But an

interpleader action still affords certain protections to the insurer. *Lee v. W. Coast Life Ins. Co.*, 688

F.3d 1004, 1009 (9th Cir. 2012).

First and foremost, "it prevents the stakeholder from being obliged to determine at his peril

which claimant has the better claim." *Id.* (citation omitted). Typically, "the protection provided by

[the interpleader] device is limited to the interpleaded defendants' competing claims to the stake."

*Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264 (3d Cir. 2009). Accordingly, "the normal

rule is that interpleader protection does not extend to counterclaims that are not claims to the in-

terpleaded funds." *Id.* (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967));

*accord Lee*, 688 F.3d at 1009. In fact, "when the stakeholder is an interested party and when one

of the claimants asserts that the stakeholder is independently liable to him, the interposition of a

counterclaim is [not only] appropriate," but "in most instances of this type, the counterclaim will be compulsory." *Lee*, 688 F.3d at 1011 (citation omitted); *accord Deshotel*, 142 F.3d at 881 (recognizing that in some instances, a claimant must assert a counterclaim because it is compulsory under Fed. R. Civ. P. 13(a) in that it arises "from the same transaction or occurrence as the underlying dispute").

But the normal rule may differ in atypical cases, such as when each counterclaim concerns the insurer's "failure to resolve its investigation in [the counterclaimant's] favor and pay out the life insurance proceeds to [the counterclaimant]." *Hovis*, 553 F.3d at 264. In such circumstances, "none of the counterclaims is truly independent of who was entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle." *Id*. at 264-65. To permit an insurer "to be exposed to liability under these circumstances would run counter to the very idea behind the interpleader remedy—namely, that a "stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim." *Id*. at 265 (quoting *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957)). In other words, when "a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty." *Id*.

Nevertheless, as *Hovis* recognizes, alleged counterclaims based on conduct that "can plausibly be blamed for the existence of the underlying ownership controversy" may make the counterclaim permissible despite the interpleader protection. *Id*. at 265-66. Such a plausible counterclaim would not be barred by the intervenor action.

The following "fundamental principles" regarding interpleader actions are gleaned from Supreme Court precedent:

> The stake marks the outer limits of the stakeholder's potential liability where the respective claimants' entitlement to the stake is the sole contested issue; however,

> where the stakeholder may be independently liable to one or more claimants, inter-
> pleader does not shield the stakeholder from tort liability, nor from liability in ex-
> cess of the stake.

*Lee*, 688 F.3d at 1011 (relying on *Tashire*, 386 U.S. at 535); *accord JSI Commc'ns v. Travelers Cas. & Sur. Co. of Am.*, 807 F.3d 725, 728 (5th Cir. 2015) (citing *Lee* with approval while includ-ing the quoted language in a parenthetical). In other words, claims that are "not 'truly independent of who was entitled to the life insurance proceeds'" may be barred by the interpleader remedy. *Berry v. Banner Life Ins. Co.*, 718 F. App'x 259, 262 (5th Cir. 2018) (per curiam) (quoting *Hovis*, 553 F.3d at 264). However, because an interpleader action "only protects disinterested stakehold-ers," protections afforded by such an action do not flow to non-stakeholders, such as named insur-ance agents. *State Farm Life Ins. Co. v. Bryant*, No. 3:18-CV-1628-L, 2019 WL 7938266, at *20 (N.D. Tex. May 16, 2019).

Not "all counterclaims against stakeholders are appropriate" and those "that are not inde-pendent of the interpleaded fund, such as a claim that the stakeholder should have paid the fund to a particular claimant rather than seek interpleader, are routinely dismissed because they would deprive the stakeholder of the intended benefit of an interpleader action." *Westlake Styrene, LLC v. United States*, No. CIV.A. H-10-2631, 2011 WL 643265, at *2 (S.D. Tex. Feb. 16, 2011) (citing *Met. Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 747-48 (S.D. Tex. 2001));[4] *accord Tex. Life Ins. Co. v. Ford [hereinafter Ford II]*, No. 4:16-CV-494, 2017 WL 7726734, at *2 (S.D. Tex. Jan. 13, 2017).

Nevertheless, as recognized in *Deshotel*, counterclaims, such as negligence, *see* 142 F.3d at 882, "that assert liability on the part of the stakeholder independent of the counterclaimant's

---

[4] In *Barretto*, the Southern District of Texas determined that a prompt payment claim "must be dismissed" when the insurer has properly filed an interpleader suit based on multiple claims for a single fund of insurance proceeds. 178 F. Supp. 2d at 747. Because such "claims of untimeliness of payment . . . are the result of [the insurer] utilizing the protections afforded by the interpleader," the insurer "should be shielded from [such] counterclaims." Id. at 748. As discussed more fully later, changes to the Texas prompt payment statute renders the case distinguishable.

rights to the disputed fund" may be properly asserted against the stakeholder, *Westlake Styrene, LLC*, 2011 WL 643265, at *2. As explained in *Lee*, "the federal interpleader remedy does not shield a negligent stakeholder from tort liability for its creation of a conflict over entitlement to the interpleaded funds . . . and a claimant may seek to recover all damages directly and proximately caused by the negligent stakeholder's conduct." 688 F.3d at 1011 (cited with approval in *Tex. Life Ins. Co. v. Ford [hereinafter Ford I]*, No. 4:16-CV-494, 2016 WL 10932919, at *3 (S.D. Tex. Dec. 30, 2016) (recommendation of Mag. J.) *adopted by* 2017 WL 7726734 (S.D. Tex. Jan. 13, 2017)). And as explained in *Hovis*, alleged plausible negligent conduct may make a counterclaim permissible despite the interpleader protection. 553 F.3d at 265-66.

The Southern District of Texas has also held that "alleged violations of the Texas Insurance Code" may constitute a claim independent of the interpleaded fund. *See Allstate Life Ins. Co. v. Saenz*, No. 1:14-CV-265, 2016 WL 6909404, at *4 (S.D. Tex. Feb. 19, 2016). Claimants in an interpleader action may assert "[c]ounterclaims that assert liability on the part of the stakeholder independent of the counterclaimant's rights to the disputed fund." *Ford II*, 2017 WL 7726734, at *2 (relying on *Westlake Styrene* and *Deshotel*). More particularly, the Southern District has held that "the following counterclaims are independent of the interpleader: (a) [the claimant's] claim that [the insurer] violated Texas Insurance Code §§ 541.051(1)(A), 541.061(1), 541.061(3), and 541.060(a)(1) by falsely representing in [a] letter that [the claimant] was the sole beneficiary of the life insurance policy; and (b) [the claimant's] claim for fraud." *Id.* at *3 n.6.

These cases present a common component – when properly invoked, the interpleader device protects the filer from counterclaims that are not independent of claimant's right to the disputed fund. *Hovis* has broad language applicable in atypical cases, but this is not the atypical case that *Hovis* faced. Moreover, *Hovis* recognized that a plausible claim of negligence may be sufficiently independent to make it a permissible counterclaim against the insurer in an interpleader

action brought by the insurer. *See* 553 F.3d at 264-66.

United relies on an apparent test for independency utilized in *Hovis*, i.e.,, if Murry would not have brought action against the insurer for any asserted counterclaim had the insurer immediately paid the proceeds of the life insurance policies, then the counterclaims are not independent from the stake. While *Hovis* provides much persuasive analysis for this case, the Court cannot accept that as the definitive test for independency. The test would often sweep away plausible negligence counterclaims that the Fifth Circuit has specifically said are permissible in an interpleader action. Because *Deshotel* is binding precedent, the proper test for independency cannot wipe away counterclaims necessarily permitted by *Deshotel*.

United identifies another test of independence which depends on whether the counterclaimant could prevail even if someone else were deemed the proper recipient of the insurance proceeds. That is an aspect of independent claims. *See Ford II*, 2017 WL 7726734, at *3. In distinguishing *Hovis* and another case, *Ford II* stated that the counterclaims are "not dependent on [the counterclaimant's] right to the disputed funds—she can prevail on [them] even if [the sole other claimant] is the proper recipient of the proceeds." *Id*. The court found that a finding in favor of the other claimant regarding the interpleaded fund "would enhance the compensatory damages to which [the counterclaimant] would be entitled" if successful on the counterclaims. *Id*. However, prior to distinguishing *Hovis*, the court noted that the counterclaimant was not arguing entitlement to the disputed policy proceeds, but was instead arguing that misrepresentations of the insurer "created the dispute itself" based on relevant conduct that had occurred months before any competing claim for insurance benefits arose. *Id*.

In summary, although United "is absolved from liability on how to distribute the disputed funds" due to its filing of this interpleader action, it remains exposed to potential liability for claims that are independent of Murry's claim for benefits under the insurance policies, including alleged

negligence surrounding a change of beneficiary designation change. *See Ford I*, 2016 WL 10932919, at \*3. When alleged conduct of the stakeholder plausibly "created the dispute itself," the interpleader action does not protect the stakeholder from counterclaims arising from such conduct. *Ford II*, 2017 WL 7726734, at \*3. "To hold otherwise would expand the doctrine well past its foundational principle." *Id*. The Court will apply these principles as it addresses Murry's counterclaims.

**B. <u>Negligence</u>**

"Texas law instructs that '[a] negligence cause of action has three elements: 1) a legal duty; 2) breach of that duty; and 3) damages proximately resulting from the breach.'" *Martinez v. Walgreen Co.*, 935 F.3d 396, 399 (5th Cir. 2019) (quoting *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998)). Murry has made sufficient factual allegations to state a plausible negligence claim against both United and its agent, Trevino. Because of the plausible claim against United, this interpleader action does not protect United from Murry's independent negligence claim.

**C. <u>Breaches of Contract and Duties of Good Faith and Fair Dealing</u>**

While this interpleader does not protect United from the negligence claim, it does protect United from the breach-of-contract and breach-of-fiduciary-duty claims. The alleged damages from the breach-of-contract claim are the insurance proceeds that Murry did not receive pursuant to the terms of the policies. This is precisely the type of claim that an interpleader action will protect the filer from exposure. It is thus subject to dismissal in this action. Likewise, Murry's breach-of-fiduciary-duty claim relies on the same facts, asserts the same damages, and does not differ materially from the breach-of-contract claim with respect to protection afforded by this interpleader action. These claims are subject to dismissal as not truly independent of the proper beneficiary entitled to the life insurance proceeds.

**D. Prompt Payment Claims**

"Chapter 542 of the Texas Insurance Code is known as the Prompt Pay Statute." *Primerica*

*Life Ins. Co. v. Gross*, No. 1:15-CV-759-DAE, 2018 WL 2181101, at *8 (W.D. Tex. Mar. 27,

2018) (citing Tex. Ins. Code Ann. §§ 542.051–542.061). To state a claim under Chapter 542, one

must allege:

> (1) the [claimant] had a claim under an insurance policy; (2) the [claimant] gave
> proper notice of its claim to the insurer; (3) the insurer is liable for the claim; and
> (4) the insurer violated Chapter 542 by not timely (a) acknowledging receipt of the
> claim, commencing any investigation of the claim, and requesting from the claim-
> ant all items, statements, and forms that the insurer reasonably believes, at the time,
> will be required from the claimant; (b) accepting, rejecting, or extending the dead-
> line for deciding the claim; and (c) paying the claim.

*Id*. (citing Tex. Ins. Code Ann. §§ 542.051, 542.055, 542.056, 542.058, 542.060).

Murry alleges that United first violated Tex. Ins. Code § 542.055 by failing to notify him

in writing whether it accepted or rejected his claim, required additional documents or forms for

the claims, or needed additional time to determine his claim. He further alleges that United next

violated Tex. Ins. Code § 542.058(c) by failing to deposit proceeds of the insurance policies into

the Court registry within ninety days of receiving documents from the claimants in this interpleader

action. He also contends that compliance with § 542.055 is a pre-requisite to reliance on §

542.058(c).

Subparagraph (c), which was added in June 2009, provides a means for life insurers to

avoid liability under § 542.060 (18% interest and attorney fees) by properly filing an interpleader

action and tendering the benefits into the registry of the court within ninety days of receiving items

under § 542.055. Subparagraph (c) states:

> [a] life insurer that receives notice of an adverse, bona fide claim to all or part of
> the proceeds of the policy before the applicable payment deadline under Subsection
> (a) shall pay the claim or properly file an interpleader action and tender the benefits
> into the registry of the court not later than the 90th day after the date the insurer
> receives all items, statements, and forms reasonably requested and required under
> Section 542.055. A life insurer that delays payment of the claim or the filing of an

interpleader and tender of policy proceeds for more than 90 days shall pay damages and other items as provided by Section 542.060 until the claim is paid or an interpleader is properly filed.

United argues that Murry has never submitted a claim, as defined by Tex. Ins. Code § 542.051(2), because he is not "a beneficiary named in the policy or contract." Murry, however, alleges he is a beneficiary for both policies based on a change of beneficiary form for each policy. His allegations are sufficient at this point in the litigation process to find that he has submitted a claim as required by § 542.051(2).

United argues that as shown by the email string (Ex. A-4) between it and Murry's former attorney, it complied with § 542.055. However, viewing the facts in a light most favorable to Murry as the Court must do when examining claims through the lens of a Rule 12(b)(6) motion to dismiss, the Court finds that Murry has still stated a plausible violation of § 542.055.

Furthermore, with respect to § 542.058(c), it is plausible from the factual allegations that the ninety days commenced on June 17, 2019, when United received the beneficiary changes to Murry from Trevino. Although United commenced this interpleader suit within ninety days of that date, it did not file its motion seeking to deposit the fund into the Court's registry until after that the ninety days elapsed. Under the alleged facts, Murry has stated a plausible § 542.058(c) claim. While United argues that it has complied with § 542.058(c) by filing this interpleader action and tendering the contested fund for deposit in the Court's registry, Murry contends that United must actually deposit the fund into the Court registry to gain the benefits of § 542.058(c). Given the plausible § 542.058(c) claim, the Court finds no need to definitive resolve that dispute on the instant motion to dismiss. Such dispute is better suited to full resolution on a complete timeline of events developed through summary judgment. At this point, it is enough that the Court finds a plausible claim that the parties can further flesh out through the summary judgment process.

As the preceding paragraphs show, Murry has satisfied the pleading requirements to state

a claim under the Texas Prompt Pay Statute. Although certainly related, such claims, moreover, appear independent of Murry's claim to the interpleader fund. If Murry were to succeed on his prompt payment claims, any damages would be in addition to whatever amount he would obtain from the interpleaded fund. The Court recognizes that *Barretto* provides a potential basis to rule otherwise. *See Met. Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 747-48 (S.D. Tex. 2001). But that case is not binding on this Court and is of limited persuasive value because it dealt with unspecified prompt payment claims before § 542.058(c) came into existence in 2009. It seems incongruous with § 542.058(c) to hold that a properly filed interpleader suit shields the insurer from liability from a statute specifically enacted to address life insurance interpleader actions.

## E. No Liability Defense

United argues that is has no liability to Murry on any counterclaim because beneficiary changes are not binding on it until it records the changes in its home office. The policies in question definitely include such language. But the same provisions also state that the changes will be effective on the date signed. United's argument ignores that effective date. United has not shown that it may ignore the effective date and the will of the insured to unilaterally refuse to record the change. Furthermore, the cited provision arguably only requires that the written request to change beneficiaries be done during the insured's lifetime. The recording of the change could plausibly occur after death consistent with the cited provision. Given that plausible reading and the plausible effective date being the date signed, the Court will not further consider this argument on the instant motion to dismiss.

## F. Summary Regarding Rule 12(b)(6) Motion to Dismiss

For the reasons stated, Murry has stated sufficient facts to support his counterclaims for negligence against both United and Trevino and for violations of the prompt pay statute against United. Furthermore, the properly filed interpleader action does not protect United from these

claims, but this action does protect it against the breach of contract and duties of good faith and fair dealing claims.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the *Opposed Motion for Discharge and Other Interpleader Relief* (ECF No. 20) filed by United of Omaha Life Insurance Company; **GRANTS IN PART** and **DENIES IN PART** *United of Omaha Life Insurance Company's Motion to Dismiss James G. Murry's Second Amended Counterclaims* (ECF No. 58); **DENIES** *Counter-Defendant Saul Trevino's Motion to Dismiss* (ECF No. 65); and **GRANTS IN PART** and **DENIES IN PART** *First Amended Joint Motion to Order Deposit and Disburse Interpled Funds* (ECF No. 68).

The Court **ORDERS** United of Omaha Life Insurance Company to deposit into the registry of the Court the full life insurance proceeds at issue in the amount of $2,000,000.00 plus accrued interest **on or before May 26, 2020**. The Court also **DISMISSES** James G. Murry's counterclaims for breaches of contract and duties of good faith and fair dealing. The Court otherwise denies the motions and relief not specifically granted herein is expressly denied.[5]

**SIGNED this 15th day of May 2020.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**

---

[5] Although the claimants have reached a settlement between themselves for the disbursement of funds, United of Omaha Life Insurance Company did not participate in settlement negotiations and it appears that the settlement did not contemplate or apportion any amount for United's attorney's fees. While, at this stage of the litigation, the Court has found that United is not a disinterested stakeholder and not entitled to fees presently, that finding is based on a review of Murry's counterclaims under the relaxed motion to dismiss standard. If that finding changes under the more stringent summary judgment standard, then attorney fees may be revisited. Until the fee issue is resolved, it appears premature to order any disbursement of funds. Of course, if the parties can amicably decide the issue of fees or agree to the disbursement of certain funds to specific claimants, the Court will entertain a joint motion addressing such issues.